IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-817

Filed: 21 February 2017

Brunswick County, No. 15 CVS 1217

TOWN OF BELVILLE, Plaintiff,

v.

URBAN SMART GROWTH, LLC, and MICHAEL WHITE, Defendants.

Appeal by plaintiff from order entered 13 April 2016 by Judge Gary E. Trawick in Brunswick County Superior Court. Heard in the Court of Appeals 26 January 2017.

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Andrew L. Rodenbough and Charles S. Baldwin, IV, and Eldridge Law Firm, PC, by James E. Eldridge, for plaintiff-appellant.*

*Hamlet & Associates, PLLC, by H. Mark Hamlet, for defendant-appellee.*

BERGER, Judge.

The Town of Belville ("Plaintiff") appeals the April 13, 2016 order entered by the Honorable Gary Trawick in Brunswick County Superior Court. The order denied Plaintiff's motion to compel Urban Smart Growth, LLC ("Defendant") to submit to binding arbitration and to stay all other proceedings in the dispute between these parties. Plaintiff argues in this interlocutory appeal that it has the contractual right to demand arbitration. However, after careful review, we affirm the trial court's order

denying this motion because Plaintiff took actions contrary to its contractual rights and waived any right to arbitration.

Factual & Procedural Background

In October 2007, Plaintiff entered into an agreement ("Agreement") with Defendant concerning a revitalization project in the town of Belville, North Carolina. The project would include a "large-scale mixed use development to be constructed in multiple phases extending over a period of 20 years, and which may include multi-family homes and/or other residential uses; professional space; recreational and/or entertainment events park; and, a multi-purpose municipal building that will include a gathering hall and administrative offices."

Pursuant to Section 8.05 of the Agreement, any dispute, claim or controversy between the parties was to be resolved first through negotiation, and then through arbitration. This section set forth the necessary procedures, requirements and time-frames to conduct arbitration. Either party could initiate negotiations by notifying the other party in writing the subject of the dispute and the relief sought. The party that received such a writing had ten days to respond with their position on and recommended solution to the dispute. If this did not resolve the dispute, then a representative of each party would meet within 30 days to attempt a resolution. If at this point there is still no resolution, the matter would be resolved through binding arbitration. Following arbitration, the party who was determined to be in default by

breaching the Agreement had 120 days to cure or begin the process to cure any such default.

On May 30, 2013, Plaintiff notified Defendant by letter that it was in default, and enumerated the reasons for default. Plaintiff further notified Defendant that, because of this default, Plaintiff wished to either renegotiate or terminate the Agreement. Plaintiff had taken the first step outlined by Section 8.05 to resolve any dispute, but the parties never engaged in negotiations or arbitration.

On July 7, 2015, more than two years later, Plaintiff filed an Application and Order Extending Time to File Complaint to assert claims against Defendant for breach of contract by non-performance and breach of contract by repudiation of the Agreement. Plaintiff stated it was seeking damages in excess of $100,000.00, a jury trial, attorney's fees, and costs, and any further relief the court determined to be necessary and proper. The order extending time was granted.

On July 27, 2015, Plaintiff filed a complaint in this action alleging breach of contract, non-performance, anticipatory repudiation, and wrongful interference with contract. Plaintiff's prayer for relief included compensatory damages, attorney's fees, costs, and a demand for a jury trial.

On September 24, 2015, Defendant filed an Answer to Plaintiff's Complaint and Counterclaims. Defendant asserted multiple defenses, along with a counterclaim

in which it alleged breach of contract and breach of duty of good faith by Plaintiff, and sought specific performance.

On October 7, 2015, Plaintiff and Defendant filed a joint motion for Recommendation for Designation of Exceptional Civil Case pursuant to Rule 2.1 of the General Rules of Practice for Superior and District Courts due to the complex evidentiary and legal issues involved in the case, as well as the voluminous amount of pretrial discovery anticipated by the parties. The Honorable Ola M. Lewis, Senior Resident Superior Court Judge for Brunswick County, entered an order on October 8, 2015, recommending the designation of this case as exceptional to the Honorable Mark D. Martin, Chief Justice of the North Carolina Supreme Court. On October 13, 2015, Chief Justice Martin ordered that the case be designated as exceptional pursuant to Rule 2.1, and also ordered that the Honorable Gary E. Trawick be assigned to handle all matters relating to the case.

On November 25, 2015, Plaintiff filed its reply to Defendant's counterclaims, asserting its defenses, and again requesting a jury trial. Counsel for Defendant forwarded a proposed Discovery Plan, Consent Confidentiality Order, and Scheduling Order to Plaintiff's counsel on December 30, 2015. Counsel for both parties met on February 10, 2016 to discuss this case. It was at this meeting that Plaintiff initiated a discussion of whether mediation and arbitration would be in the parties' interest. Plaintiff, however, did not assert its right to arbitration at this time. Defendant,

anticipating continued litigation, moved forward with discovery by serving Plaintiff with Request for Admissions, Interrogatories, Requests for Production of Documents, and a Notice to Take Depositions.

On February 17, 2016, over 32 months after Plaintiff alleged it had notified Defendant of default, and over seven months after Plaintiff had instituted this action, Defendant received a letter from Plaintiff in which Plaintiff gave notice that it would be initiating negotiations pursuant to Section 8.05 of the Agreement.

The following day, Plaintiff filed and served Defendant with a Motion to Compel Arbitration and Stay Proceedings. Judge Trawick entered an order on March 14, 2016, staying the proceedings until a hearing could be held on the Motion.

In preparation for the hearing on the Motion to Compel Arbitration, Defendant served Plaintiff with a brief in opposition to its motion. Attached to the brief were affidavits of both Daniel L. Brawley and Jessica S. Humphries, counsel for Defendant, that reflected the amount of attorney's fees expended by Defendant in preparation for this litigation. Plaintiff did not object to or contest the sufficiency of these affidavits at the hearing. At the conclusion of the hearing, Judge Trawick denied Plaintiff's motion, and asked that amended affidavits be submitted to the court that set forth with more specificity the actions Defendant had taken since the previous September.

An order was entered on April 13, 2016 denying Plaintiff's Motion to Compel Arbitration. It is from this order that Plaintiff timely appeals.

Analysis

We must initially note that, even though an order denying a party's motion to compel arbitration is interlocutory, "[it] is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." *Prime South Homes, Inc. v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991) (citing *Sims v. Ritter Constr., Inc.*, 62 N.C. App. 52, 302 S.E.2d 293 (1983); N.C. Gen. Stat. §§ 1-277(a), 7A-27(d)(1) (1991)).

Plaintiff contends that the trial court erred in concluding that Plaintiff had waived its right to compel arbitration. Plaintiff specifically alleges that the evidence submitted by Defendant to substantiate the expenditures preparing for continued litigation was insufficient to support the court's findings. Plaintiff also argues that the trial court erred in concluding that the attorney's fees incurred by Defendant constituted sufficient prejudice for a finding that Plaintiff had waived its right to compel arbitration.

The trial court based its denial of Plaintiff's motion on the following conclusions of law:

> 1. A party has waived its contractual right to arbitration if by its delay or by actions it takes which are inconsistent with arbitration, another party is prejudiced by the order compelling arbitration.
> 2. The [Plaintiff] has waived any right to arbitration of the claims in this action by virtue of (a) its delay in demanding arbitration; (b) its actions taken inconsistent with a right to arbitration; (c) seeking

designation of this case as [an] exceptional case under Rule 2.1 of the General Rules of Practice; (d) seeking significant involvement of the judiciary, and (e) the prejudice that would result to [Defendant] if the court were to order arbitration.

With regard to the trial court's findings of fact supporting these conclusions of law, Plaintiff specifically challenges the following findings as not being supported by the evidence:

> 27. [Plaintiff] has taken numerous actions inconsistent with any right to arbitration, to wit, instituting this action, making five filings in this action without any mention of arbitration but rather in two (2) filings requesting a jury trial, actively seeking a Rule 2.1 designation, and actively requesting and determining the availability of, a Special Judge to preside over this action.
> 29. An Order compelling arbitration would be prejudicial to [Defendant] in that it has incurred costs that it would not have incurred had [Plaintiff] not delayed in making its demand for arbitration. Those costs exceed $34,600 and relate to: participating in the process of the Rule 2.1 designation, reviewing the reply, communicating with opposing counsel, co-counsel, and client concerning litigation matters, preparing the Discovery Plan, Consent Confidentiality Order, and Scheduling Order, conference with opposing counsel, dealing with the proposed stay order, reviewing and responding to the Motion to Compel Arbitration and Stay Proceedings and Brief, and representing [Defendant] at the hearing on the Motion to Compel Arbitration and Stay Proceedings.

"Findings of fact, when supported by any evidence, are conclusive on appeal," *Fairchild Realty Co. v. Spiegel, Inc.*, 246 N.C. 458, 465, 98 S.E.2d 871, 876 (1957) (citations omitted), "even when there may be evidence to the contrary." *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980) (citations

omitted). "While facts found below which are supported by the evidence are conclusive on this Court, we are not bound by the inferences or conclusions that the trial court draws from them." *Prime South Homes*, 102 N.C. App. at 258, 401 S.E.2d at 825 (citation omitted). "In accordance with these principles, we must determine whether there is evidence in the record which would support the trial court's findings of fact and if so, whether those findings of fact support the conclusion that plaintiff has waived its right to compel arbitration." *Id.*

In North Carolina, parties are free to contract and bind themselves to any terms that are not contrary to the public policies of this state or prohibited by statute. *Hlasnick v. Federated Mut. Ins. Co.*, 353 N.C. 240, 242-43, 539 S.E.2d 274, 276 (2000). In fact, North Carolina has a strong public policy in favor of resolving disputes through alternative dispute resolution mechanisms, such as arbitration. *See Prime South Homes*, 102 N.C. App. at 258, 401 S.E.2d at 825 (1991) ("[T]here exists in North Carolina a strong public policy in favor of settling disputes by arbitration.").

"Because of the strong public policy in North Carolina favoring arbitration, … courts must closely scrutinize any allegation of waiver of such a favored right." *Cyclone Roofing Co. v. Lafave Co.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984) (citations omitted). A party has impliedly waived its contractual right to arbitration only if, by its delay or by actions it takes which are inconsistent with arbitration, another party to the contract is prejudiced by the order compelling arbitration. *Id.*

"A party may be prejudiced if, for example, . . . . by reason of delay, a party has taken steps in litigation to its detriment or expended significant amounts of money thereupon." *Id.* at 229-30, 321 S.E.2d at 876-77 (citations omitted).

Because Defendant has expended significant amounts of money in defense of Plaintiff's initiation of this suit, before Plaintiff belatedly demanded arbitration, we affirm the trial court's order based upon the prejudice to Defendant. Of the two findings of fact to which Plaintiff objects, the evidence which supports Findings 27 and 29 can be found in affidavits filed by Defendant in this action.

Defendant submitted affidavits of Daniel L. Brawley and Jessica S. Humphries which demonstrate that Defendant incurred costs in excess of $34,600.00 from the time of service of its Answer and Counterclaims to the Motion to Compel Arbitration. As the trial court detailed in Finding 29, Defendant did in fact "incur[ ] costs that it would not have incurred had [Plaintiff] not delayed in making its demand for arbitration." The evidence before the trial court tended to show that more than $34,600.00 was expended "in participating in the process of the Rule 2.1 designation, reviewing the reply, communicating with opposing counsel, co-counsel, and client concerning litigation matters, preparing the Discovery Plan, Consent Confidentiality Order, and Scheduling Order, conference with opposing counsel, dealing with the proposed stay order, and reviewing and responding to the Motion to Compel Arbitration and Stay Proceedings and Brief." The trial court concluded that, because

Defendant had expended significant resources to prepare for litigation, an order compelling arbitration would result in prejudice to the Defendant.

Here, as in *Prime South Homes*, "[t]he accrual of these costs was by reason of [P]laintiff's delay in demanding arbitration and would not have been incurred had [P]laintiff made a timely demand." *Prime South Homes*, 102 N.C. App. at 261, 401 S.E.2d at 827.

Conclusion

In conclusion, the trial court's findings of fact are supported by the evidence and support its conclusions of law. Therefore, we affirm the judgment of the trial court that Plaintiff has impliedly waived its right to compel arbitration.

AFFIRMED.

Chief Judge MCGEE and Judge DAVIS concur.