JAMES WILLIAM BURGESS AND GEORGIA BURGESS, PLAINTIFFS v. JIM WALTER HOMES, INC.; FIRST UNION NATIONAL BANK; YADKIN COUNTY, BY AND THROUGH ITS COUNTY MANAGER CECIL WOODS; JERRY MILLER, INDIVIDUALLY; AND JERRY MILLER, IN HIS CAPACITY AS HOUSING INSPECTOR FOR THE COUNTY OF YADKIN, DEFENDANTS

No. COA03-160

(Filed 2 December 2003)

**1. Appeal and Error— appealability—denial of arbitration**

An order denying arbitration is interlocutory but appealable.

**2. Arbitration and Mediation— reference to attached arbitration agreement—not attached or executed—not enforceable**

There was no meeting of the minds on an agreement to arbitrate where the contract provision referred to another "attached" document which was not attached or executed.

**3. Contracts— arbitration agreement in prior contract—not incorporated into new agreement**

The arbitration clause in an earlier contract was not incorporated into a subsequent contract where the parties expressed their clear and definite intent to execute a new contract that would supersede the first.

**4. Arbitration and Mediation— right to challenge agreement—not waived**

Plaintiffs preserved their right to challenge an arbitration agreement where they denied the existence of an arbitration

**BURGESS v. JIM WALTER HOMES, INC.**

[161 N.C. App. 488 (2003)]

agreement, demanded a jury trial, and did not participate in the arbitration hearing.

Appeal by defendants Jim Walter Homes, Inc. and First Union National Bank from order entered 15 November 2002 by Judge Michael E. Helms in Yadkin County Superior Court. Heard in the Court of Appeals 29 October 2003.

*Ronald J. Short and Eleanor Panetti, for plaintiffs-appellees.*

*Timothy G. Sellers and Michelle Price Massingale, for defendants-appellants Jim Walter Homes, Inc. and First Union National Bank.*

TYSON, Judge.

Jim Walter Homes, Inc. ("Jim Walter Homes") and First Union National Bank ("FUNB") appeal from the trial court's order denying their motion to stay action pending arbitration. We affirm.

## I. Background

On 27 October 1997, James William Burgess and Georgia Burgess ("plaintiffs") entered into a contract ("1997 contract") with Jim Walter Homes for construction of a house. While executing that contract, plaintiffs also signed a separate arbitration agreement which was incorporated by reference in paragraph nine. The arbitration agreement was attached as Exhibit D to the contract and stated, in part, "The parties agree that . . . any controversy or claim arising out of or relating to this contract . . . shall be settled by binding arbitration . . . . The parties agree and understand that they choose arbitration instead of litigation to resolve disputes." No work was performed by Jim Walter Homes pursuant to the terms of the 1997 contract.

The parties signed a second contract on 14 April 1999 ("1999 contract") for the construction of a house to be built at the same location but with different costs and specifications from those in the 1997 contract. Plaintiffs initialed paragraph nine, identical to paragraph nine signed in the 1997 contract, which states "BUYER ACKNOWLEDGES HAVING READ, UNDERSTOOD AND ACCEPTED THE ARBITRATION AGREEMENT SET FORTH IN EXHIBIT D ATTACHED HERETO AND INCORPORATED BY THIS REFERENCE." No Exhibit D was attached to the 1999 contract. The parties did not execute a separate arbitration agreement.

Subsequent to the signing of the 1999 contract, a controversy arose between the plaintiffs and Jim Walter Homes concerning Jim Walter Homes's performance of the 1999 contract terms. Discussions between the parties ultimately led to mediation. The parties did not reach a settlement.

Jim Walter Homes gave notice on 7 September 2001 that it was exercising its right, under the 1999 contract, to have the dispute arbitrated. A Notice of Commencement of Arbitration was forwarded to the parties on 14 September 2001. The parties held an administrative conference to discuss the procedures for the submission of claims and counterclaims, as well as the final selection of an arbitrator. Plaintiffs filed a complaint and moved for summary determination of the existence of an arbitration agreement, or in the alternative, to set aside any agreement to arbitrate. Jim Walter Homes and FUNB moved to stay action pending arbitration. The trial court determined that no arbitration agreement existed and denied Jim Walter Homes and FUNB's motion to stay action pending arbitration. Jim Walter Homes and FUNB appeal.

## II. Issues

The issues are: 1) whether a valid arbitration agreement exists, and 2) whether plaintiffs waived their right to contest the validity of the arbitration agreement by submitting to preliminary arbitration procedures.

## III. Arbitration Agreement

[1] Jim Walter Homes and FUNB contend the trial court erred by failing to stay action pending arbitration because the parties had specifically agreed to arbitrate any disputes regarding the building contract. We first note that "an order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." *Prime South Homes v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991); *see also Park v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 N.C. App. 120, 121-22, 582 S.E.2d 375, 377 (2003). "Strong public policy favoring settlement of disputes by arbitration requires us to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration." *Servomation Corp. v. Hickory Construction Co.*, 316 N.C. 543, 546, 342 S.E.2d 853, 855 (1986). Our Court has held

> before a dispute can be settled in this manner, there must first exist a valid agreement to arbitrate. G.S. § 1-567.2. The law of

contracts governs the issue of whether there exists an agreement to arbitrate. *Southern Spindle and Flyer Co., Inc. v. Milliken & Co.*, 53 N.C. App. 785, 281 S.E.2d 734 (1981), *disc. review denied*, 304 N.C. 729, 288 S.E.2d 381 (1982). Accordingly, the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes. *Id.*

*Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 271-72, 423 S.E.2d 791, 794 (1992).

N.C. Gen. Stat. § 1-567.2 (2001) states:

(a) Two or more parties may agree in writing to submit to arbitration any controversy existing between them at the time of the agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof. Such agreement or provision shall be valid, enforceable, and irrevocable except with the consent of all the parties, without regard to the justiciable character of the controversy.

To determine whether the parties agreed in writing to submit to arbitration, we must consider whether the 1999 contract alone is sufficient to bind the parties to arbitration, and, if not, whether the 1999 contract sufficiently incorporates the 1997 agreement by reference.

### A. The 1999 Contract Standing Alone

[2] "Before a valid contract can exist, there must be a mutual agreement between the parties as to the terms of the contract." *Martin v. Vance*, 133 N.C. App. 116, 121, 514 S.E.2d 306, 309 (1999). "When there has been no meeting of the minds on the essentials of an agreement, no contract results." *Creech v. Melnik*, 347 N.C. 520, 527, 495 S.E.2d 907, 912 (1998); *see also Routh*, 108 N.C. App. at 273, 423 S.E.2d at 795 (parties did not have a meeting of the minds with regard to agreement to arbitrate). "Where the contract's language is clear and unambiguous, the court is required to interpret the contract as written." *Red Springs Presbyterian Church v. Terminix Co.*, 119 N.C. App. 299, 302, 458 S.E.2d 270, 273 (1995) (citing *Routh*, 108 N.C. App. 268, 423 S.E.2d 791).

In the case at bar, plaintiffs initialed the ninth paragraph of the 1999 contract which states "BUYER ACKNOWLEDGES HAVING READ, UNDERSTOOD AND ACCEPTED THE ARBITRATION

AGREEMENT SET FORTH IN EXHIBIT D ATTACHED HERETO AND INCORPORATED BY THIS REFERENCE." No arbitration agreement was executed or attached to the 1999 contract. The "clear and unambiguous language" of the 1999 contract does not indicate the parties agreed to arbitrate their claims, but only references a purported document whereby the parties intended to set forth an arbitration agreement. *Id.*

"Parties to an arbitration must specify clearly the scope and terms of their agreement to arbitrate." *Raspet v. Buck*, 147 N.C. App. 133, 135, 554 S.E.2d 676, 678 (2001). Here, the initialed ninth paragraph of the 1999 contract does not clearly express whether the parties agreed to arbitrate or specify the "scope and terms" of any agreement. *Id.* The initialed ninth paragraph of the 1999 contract neither requires nor sheds light on the parties' intent to settle their disputes by arbitration. *See Routh*, 108 N.C. App. at 273, 423 S.E.2d at 795.

We hold that paragraph nine in the 1999 contract, standing alone, is insufficient to show a "meeting of the minds" with regard to an agreement to arbitrate disputes between the parties. *Creech*, 347 N.C. at 527, 495 S.E.2d at 912.

### B.  Incorporation by Reference

[3] Jim Walter Homes and FUNB argue the trial court erred by concluding that the 1999 contract superseded the 1997 contract and was the only controlling contract.

> If the parties do not say whether a new contract is being made, the courts will look to the words of the contracts, and the surrounding circumstances, if the words do not make it clear, to determine whether the second contract supersedes the first. If the second contract deals with the subject matter of the first so comprehensively as to be complete within itself or if the two contracts are so inconsistent that the two cannot stand together a novation occurs.

*Whittaker General Medical Corp. v. Daniel*, 324 N.C. 523, 526, 379 S.E.2d 824, 827 (1989). "Novation requires the agreement of the parties that a new contract take the place of an existing obligation. The intention of the parties to effectuate a novation must be clear and definite, for novation is never to be presumed." *Kirby Building Systems v. McNiel*, 327 N.C. 234, 243, 393 S.E.2d 827, 832 (1990) (citations omitted).

BURGESS v. JIM WALTER HOMES, INC.

[161 N.C. App. 488 (2003)]

Here, the parties expressed their "clear and definite" intent to execute a new contract to supersede the 1997 contract. *Id.* Paragraph eighteen in the 1999 contract reads "This Building Contract, promissory note, deed of trust and the contract documents executed herewith <u>constitute the entire agreement</u> between the parties hereto with respect to the transactions contemplated herein, and this Building Contract promissory note, deed of trust and <u>the contract documents supersede all prior oral or written agreements, commitments or understandings</u> with respect to the matters provided for herein." (emphasis supplied).

We conclude that the 1999 contract supersedes the 1997 contract. The 1999 contract did not incorporate by reference the prior 1997 arbitration agreement. Without the execution of a new Exhibit D Arbitration Agreement, Jim Walter Homes and FUNB cannot prove the existence of an agreement to arbitrate all disputes arising out of the 1999 contract. This assignment of error is overruled.

## IV. Waiver of Right to Challenge Arbitration Process

[4] Jim Walter Homes and FUNB argue the trial court erred by denying their motion to stay action pending arbitration because plaintiffs waived their right to challenge the arbitration agreement. This Court has held that a party's "consent to submission of the matter to arbitration and his participation in the arbitration hearing, without making any objection, demand for jury trial or motion to stay the proceedings, resulted in a waiver of the right to subsequently challenge the arbitration process." *McNeal v. Black*, 61 N.C. App. 305, 308, 300 S.E.2d 575, 577 (1983); see also *Carteret County v. United Contractors of Kinston*, 120 N.C. App. 336, 341, 462 S.E.2d 816, 820 (1995) ("Participation in arbitration proceedings without making any protest or demand for a jury trial waives any right to later object to the arbitration award on these grounds.")

Here, plaintiffs challenged the existence of an arbitration agreement prior to a hearing and after giving Jim Walter Homes and FUNB the opportunity to produce an agreement to arbitrate. The parties had set an arbitration schedule, along with a tentative hearing date in November, 2002. Plaintiffs filed a complaint requesting a jury trial on 26 July 2002. Plaintiffs' amended complaint, filed on 28 August 2002, also requested a jury trial. Plaintiffs obtained a hearing to determine the existence of an arbitration agreement on 9 September 2002. At no point did the parties participate in an arbitration hearing or obtain a decision on the merits.

Plaintiffs properly objected to the arbitration process by: 1) denying the existence of an arbitration agreement, 2) demanding a jury trial, and 3) not participating in the arbitration hearing. *See McNeal,* 61 N.C. App. at 308, 300 S.E.2d at 577. Plaintiffs did not waive their right to challenge the arbitration agreement. This assignment of error is overruled.

### V.  Conclusion

The trial court correctly concluded that the 1999 contract failed to include an agreement to arbitrate disputes between the parties. The trial court did not err in concluding plaintiffs did not waive their right to challenge the existence of the arbitration agreement. We affirm the trial court's order denying Jim Walter Homes and FUNB's motion to stay action pending arbitration.

Affirmed.

Judges McCULLOUGH and BRYANT concur.